IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KELLY ALLEN REPP, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CORRECTIONS CORP. OF ) <br> AMERICA, IDAHO CORRECTIONAL ) <br> CENTER, AMY SCHAPART, et al., ) <br> ) <br> Defendants. ) <br> _____) | Case No. CV02-467-S-BLW <br><br> **MEMORANDUM ORDER** |

The Court previously disposed of various Motions for Summary Judgment filed by Defendants, but allowed Defendants Idaho Correctional Center (ICC), Correctional Corporation of American (CCA), and Dr. Duane Mabeus to file second motions for summary judgment on the remaining issue that Plaintiff was denied pain medication after his surgery.[1]  Currently pending before the Court in this civil rights case are Defendant ICC/CCA's Second Motion for Summary Judgment (Docket No. 59) and Defendant

---

[1] The Court earlier granted summary judgment in favor of Defendants Amy Schapart and Mike Trant on all claims.

**MEMORANDUM ORDER  1**

Mabeus's Second Motion for Summary Judgment (Docket No. 64).  Plaintiff has been provided with the Notice to Pro Se Litigants of the Summary Judgment Rule Requirements (Docket Nos. 63 & 69).

This case is suitable for disposition without oral argument.  *See* D. Idaho L. Civ. R. 7(d).  Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

### I.

### MOTIONS FOR SUMMARY JUDGMENT

**A.     Standard of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the

**MEMORANDUM ORDER  2**

burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party.  All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

To prevail on an Eighth Amendment claim regarding prison medical care, a plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  The Supreme Court has opined that "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  *Id.*

> The Ninth Circuit has defined a "serious medical need" in the following ways: failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain; . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*,

**MEMORANDUM ORDER  3**

*WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Mere indifference, medical malpractice, or negligence will not support a cause of action under the Eighth Amendment. *Broughton v. Cutter Lab*, 622 F.2d 458, 460 (9th Cir. 1980).

**B.     Facts and Discussion**

In his Complaint, Plaintiff contended that Defendant Dr. Duane Mabeus was deliberately indifferent in his care and treatment of Plaintiff's medical condition. The Court earlier granted summary judgment on all of Plaintiff claims against Dr. Mabeus, with the exception of Plaintiff's claim that he was denied pain medication after his surgery. In his current motion for summary judgment, Dr. Mabeus now argues that he was not deliberately indifferent to Plaintiff's condition during that time period.

The Court also granted summary judgment in favor of Defendants CCA and ICC on all of Plaintiff claims, with the exception of Plaintiff's claim that he was denied pain medication after his surgery as a result of their policies. CCA and ICC now argue that they are entitled to summary judgment on the remaining claim.

**MEMORANDUM ORDER  4**

During the time period in question, Plaintiff was an inmate at the Idaho Correctional Center (ICC), a private prison operated by Corrections Corporation of America (CCA), housing prisoners who are in the custody of the Idaho Department of Correction (IDOC). On February 27, 2001, about 9:00 p.m., Plaintiff was admitted to the ICC infirmary for observation based upon his complaints of abdominal pain. *See Medical Records Exhibits attached to Affidavit of Dr. Mabeus* (Docket No. 43). Dr. Mabeus treated Plaintiff according to his symptoms. Plaintiff's abdominal problems continued. On March 2, 2001, Plaintiff was admitted to the hospital where he underwent an exploratory laparatomy and release of an internal hernia to relieve a small bowel obstruction. *See Affidavit of Dr. Mabeus*, at ¶ 9 (Docket No. 43).

When Plaintiff returned to ICC from the hospital, he had a supply of Vicodin, a narcotic pain medication, issued from the hospital. *Supplemental Affidavit of Dr. Mabeus*, at ¶ 2 (Docket No. 48). He was authorized to take one to two tablets four times a day as needed for pain. *Affidavit of Jeff Scharf*, at ¶ 6 (Docket No. 62).

On March 9, 2001, the day Plaintiff returned to ICC from the hospital, Dr. Garrett, an ICC doctor, issued a 10-day prescription for one to two tablets of Vicodin every four hours as needed for pain. *Affidavit of Jeff Scharf*, at ¶ 7 (Docket No. 62). Plaintiff asserts that the pharmacy administered one tablet of Vicodin per day for the first seven days, none for the next three days, and then one per day again for a few days. *Plaintiff's Memorandum in Opposition to Defendants' Second Summary Judgment Motion*, at p. 2 (Docket No. 79).

**MEMORANDUM ORDER  5**

The medical records show that Dr. Mabeus issued an extension of the prescription on March 19, 2001, allowing three doses a day for 14 days.[2]  *Scharf Affidavit*, at ¶ 8. Plaintiff asserts that he did not see Dr. Mabeus until many weeks after March 19.  *See Plaintiff's Memorandum*, at p. 2 (Docket No. 79).  Dr. Mabeus also asserts that he authorized Plaintiff to have non-narcotic pain medication along with the Vicodin, to make up for the half-dose of Vicodin.  *Mabeus Supplemental Affidavit*, at ¶ 3 (Docket No. 48). This authorization is not documented in the medical records, and there is no evidence that the pharmacy or any other medical staff had directions to, or did, give Plaintiff other non-narcotic pain medication.  Plaintiff asserts that he received none.  *See Plaintiff's Memorandum*, at p. 3 (Docket No. 79).

Defendants ICC/CCA assert that their policy on administering narcotic medication is as follows:

> When an inmate has a prescription for medication as needed for pain, it is the inmate's responsibility to go to the ICC medical center to request the medication.  Upon dispersal of medication, a notation is made on the inmate's Medication Administration Record.

*Scharf Affidavit*, at ¶ 9.[3]

---

[2] Both Plaintiff and Dr. Mabeus agree that the dose was half of what the hospital had prescribed.

[3] A summary of the policy governing the prescribing of narcotic drugs at ICC is as follows:
> Because of the particular need to control prescription drugs within the ICC facility, the policy indicates that prescriptions written by off-site health care providers are considered recommendations only and that final prescription authority within ICC is with the ICC doctor.
> Because of the concern with addictions to controlled substances within the

**MEMORANDUM ORDER  6**

>Defendants ICC/CCA allege that in Plaintiff's case, the following occurred:
>
>>Repp's Medication Administration Record shows dispersal of the Vicodin to Plaintiff pursuant to the prescriptions, and that he discontinued using the medication as of March 24, 2001, one week before the prescription's expiration.  This record also shows that Repp never requested the maximum allowed doses of Vicodin before he discontinued its use.

*Id.*, at ¶ 10.

While ICC/CCA assert that the Medication Administration Record (MAR) contains no notation that Repp requested more Vicodin than was administered, there does not appear to be any place on the MAR for the prescribing pharmacist or nurse to note that an inmate requested more medication.  *See Medical Records Submitted with Scharf Affidavit* (Docket No. 62).  Similarly, there is no place to note whether Repp requested the non-narcotic medication that he was allegedly authorized to receive.  Repp's allegations that he requested additional medication and that he was refused medication, as well as his allegations that the refusal of the medication caused him intense pain, are supported by the Affidavit of Inmate Larry Harms (Docket No. 77).

At issue is whether Dr. Mabeus was deliberately indifferent to Plaintiff's medical condition.  The first Vicodin prescription, written by Dr. Garrett on the date Plaintiff returned from the hospital, allowed for administration of one or two Vicodin every four

---

>facility, the policy mandates that unless otherwise specified by the prescribing health care provider, controlled substance use is limited to 72 hours.  This policy gives the health care provider the discretion to prescribe controlled substances for a time period in excess of the 72 hours should he determine a need exists.

*Scharf Affidavit*, at ¶¶ 3&4 (Docket No. 62).  The actual text of the policy is attached to the Scharf Affidavit as Exhibit A.

**MEMORANDUM ORDER  7**

hours, which was a dosage *greater* than that prescribed by the hospital (one or two tablets four times a day (every six hours). For unknown (or disputed) reasons, the pharmacy or nurse administered only one Vicodin per *day* until March 16. This failure to follow the doctor's orders and to heed the patient's requests cannot be attributed to Dr. Mabeus or Dr. Garrett (a non-defendant), but appears attributable to another person or entity.

Plaintiff apparently had a lapse in medication for several days, from March 16 to March 19. It is not clear that Dr. Mabeus was monitoring Dr. Garrett's prior prescription or that he was treating Plaintiff at the time. Therefore, this time period without medication cannot be attributed to Dr. Mabeus.

Plaintiff was next prescribed a half-dose of Vicodin by Dr. Mabeus for an additional 14 days. There is nothing in the medical records to support Dr. Mabeus's assertion that he authorized medical staff to give Plaintiff a non-narcotic pain medication to supplement the half-dose of Vicodin. Accordingly, it would be a jury issue as to whether, after ten days post-surgery, Dr. Mabeus' decision to reduce the dosage of Vicodin was the result of deliberate indifference (which would support an Eighth Amendment award of damages), mere negligence (which would not support an award of damages), or neither.

Turning to ICC/CCA, the Court notes that the law applicable to public entity defendants can be analogized to private entity defendants.[4] While § 1983 does not

---

[4] *See, e.g., Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Ibarra v. Las Vegas Metro. Police Dep't*, 572 F.Supp. 562, 563-645 (D.Nev. 1983); *Taylor v. Plousis*, 101 F.Supp.2d 255, 263-64

**MEMORANDUM ORDER  8**

support liability on a respondeat superior theory, a public entity can be held liable when it commits constitutional violations pursuant to the entity's official policy, practice, or custom, *Monell v. Department of Social Services*, 436 U.S. 658, 690-92 (1978), or if its inadequate training of employees arises to the level of deliberate indifference, *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).

In Plaintiff's case, a jury could find that the policy, practices, and customs of ICC/CCA regarding administration of narcotic medication or its failure to train ICC/CCA employees or medical contractors may have played a role in causing Plaintiff's injury between the dates of March 9, 2001, and March 24, 2001. There is also a jury question as to Dr. Mabeus's issuance of post-surgery medication to Plaintiff between March 19, 2001, and March 24, 2001. In addition, Plaintiff could name by amendment additional medical defendants or ICC/CCA defendants who could be found liable for failure to administer the post-surgery pain medication as prescribed by the doctors and requested by Plaintiff.

For these reasons, the Court will deny the pending motions for summary judgment and order the parties to attend a judicial settlement conference with Magistrate Judge Mikel H. Williams. The parties shall contact Judge Williams' scheduling clerk, Anne Lawron, at 334-9387, to schedule the conference. If the parties are unable to reach a settlement with Judge Williams, then the Court will appoint counsel and allow a brief

---

(D.N.J. 2000); *Whalen v. Correction Medical Service*, 2003 WL 21994752 (D.Del. 2003).

**MEMORANDUM ORDER  9**

time period for additional discovery and amendment before the parties proceed to trial.

## II.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant ICC/CCA's Second Motion for Summary Judgment (Docket No. 59) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendant Mabeus's Second Motion for Summary Judgment (Docket No. 64) is DENIED.

IT IS FURTHER HEREBY ORDERED that the parties shall attend a judicial settlement conference with Magistrate Judge Mikel H. Williams.  Within the next thirty (30) days, the parties shall contact Judge Williams' scheduling clerk, Anne Lawron, at 334-9387, to schedule the conference.

DATED:  **September 30, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**MEMORANDUM ORDER  10**